In the matter of THOMAS BROWNING.

A purchaser at a master's sale is bound to complete the purchase, where the vendor shews a prima facie title, against which there are no reasonable grounds of suspicion.

If it appears that any person is making a claim adverse to the title of the vendor, or that there are probable grounds for supposing such a claim will be made, the court will direct the testimony of the witnesses to be per petuated.

CATHARINE KOHLER, the special guardian of the infant children of Charles Kohler deceased, under an order of this court, sold to Browning a piece of land at Bushwick, con-taining about two acres; and the sale having been report-ed to the Chancellor, he confirmed the report, and directed a conveyance to be made to the purchaser. Browning then presented his petition, setting forth the proceedings and sale; that the property was sold at auction, and that a good title was to be given. He further set forth in his petition that he had paid the purchase money to the auctioneers, to be held by him until the title should be made satisfactory; that the deed had been executed in pursuance of the order of the court and placed in the hands of the petitioner's counsel for the purpose of an examination of the title; that the money had been paid over to the guardian upon an agreement to be refunded in case the title should prove to be defective. The petitioner fur-ther stated that his counsel had advised him the title was de-

·fective, and he therefore prayed that the purchase money might be refunded to him, together with the interest thereon and the costs. A reference was made to a master to ascertain and report whether the title of the infants was good, and such as the petitioner ought to take under the sale. The master reported that the title was not valid, nor such as the petitioner ought to accept. From this decision of the master the guardian appealed to the court.

*D. B. Tallmadge*, for the infants.

*Elijah Paine*, for the petitioner.

THE CHANCELLOR. No person makes any claim to this property in opposition to the infants; and the only question is what evidence of title a purchaser under an order of sale has a right to require. The abstract of title furnished by the guardian extends back nearly forty years, and no one has claimed the land in opposition to this chain of title during the whole of that time. Even without the admission of the petitioner's counsel, I think at this time it must be considered that a valid title passed to J. Williams under the deed of March, 1791, which is on record. In 1797, Williams conveyed the premises to F. Vandervoort, and this conveyance is also recorded. Vandervoort conveyed to W. Dougherty about the year 1804. Dougherty is dead, and his deed is not produced. But Vandervoort, the grantor, was examined before the master, and swore that he sold and conveyed the land to Dougherty, for the consideration of £28, with warranty; that Dougherty went into possession and built a house thereon. Dougherty lived on the premises until 1807, when he sold to N. Williamson, who is also dead, The deed from Dougherty to Williamson is not produced; but Vanderveer swears that Dougherty told him he had sold the land to Williamson. He also swears that afterwards, when he drew the deed from Williamson to Gosline, he had a deed before him from which he copied the boundaries, and which he believes was the deed from Dougherty to Williamson. In 1811, Williamson and wife conveyed to W. Gosline, which deed is duly acknowledged. Gosline conveyed to W. Smith in 1816, and the lat-

ter conveyed to the father of the infants in 1818; and upon his death the title came to them by descent. Both of these deeds are also duly acknowledged. The master has decided that the infants' had not a valid title to the lands in question, but upon what ground the decision is founded is not stated in the report. I presume it is because the deeds from Vandervoort to Dougherty, and from the latter to Williamson, were not produced before him. When those deeds were given, there was no law requiring them to be recorded; and it was not the practice at that time to put deeds on record, except in recording counties. The removal and death of the grantees sufficiently accounts for their non-production; and it does not appear that any objection was made on the ground that the proper places had not been searched. As Williamson conveyed with warranty, it would be natural that he should keep the deeds on which his title depended, instead of handing them over to the grantee. In deciding upon the question of the validity of title, it is always proper to take into consideration the custom of the country at the time the conveyances were made. Since the recording acts were passed, it would be a circumstance of suspicion that no conveyance was found on record; and to protect the purchaser, the vendor would be bound to have all the deeds recorded which were necessary to the validity of the title. But where it is not necessary to have the deeds recorded, it is sufficient for the vendor to shew a prima facie title, against which there are no reasonable grounds of suspicion; leaving the purchaser to establish such title by the ordinary proof, if it ever should be contested. If it appeared that any person was making an adverse claim, or there was any reason to suppose that such a claim would be made, the court might direct the testimony of the witnesses to be perpetuated. But it would be a useless expense, and it is unreasonable to ask it in a case like the present. Such a thing could never have been thought of by either party at the sale. The title to the property is not only valid but unsuspected. If no deed was ever given to Williamson, it is now nearly twenty five years since he went into possession of the land claiming it as his

own. The master's report must be overruled; but as there was originally some color for objecting to the title, before the explanatory evidence was introduced, I shall not charge the petitioner with costs.